## Saracena v. Saint Paul-Mercury Indemnity Company

*Nauman, Smith, Shissler & Hall*, for plaintiff.
*Metzger & Wickersham*, for defendant.

SOHN, J., June 21, 1954.—In this matter plaintiff, Dominic Saracena, also known as Dominick Saracena, brought an action in assumpsit upon a contractor's liability insurance policy, in which plaintiff was named as the insured, against defendant company as the insurer. A complaint was filed, to which defendant made answer in which it admitted all the material averments of the complaint, and a stipulation of counsel was later filed relative to clarifying the meaning of one of the denials interposed by defendant's answer. By the pleadings, which consisted of the complaint and answer and stipulation of counsel, the following facts were established:

Plaintiff was insured by defendant under a contractor's liability policy in the amount of $5,000 for each accident and $25,000 in the aggregate, the insuring agreement providing as follows:

"Insuring Agreements

"I. . . . Coverage B—Property Damage Liability. To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined. II. Service, Defense, Settlement, Supplementary Payments. It is further agreed that as respects insurance afforded by this policy the Company shall . . . (b) defend in his name and behalf any suit against the Insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company; . . .

The company agrees to pay the amounts incurred un-

der divisions (a), (b), and (c) of this section in addition to the applicable limit of liability of this policy."

While this policy was in force, on or about April 1, 1948, plaintiff began to excavate a certain lot, and one Hassler, an adjoining land owner, claimed that plaintiff's employes had caused large quantities of dirt and gravel from the excavation to be placed upon Hassler's land, and demanded the removal thereof, and also damages to the land and certain shrubs and growing things thereon. Plaintiff promptly notified defendant of this claim. Defendant caused an investigation to be made and on June 14, 1948, advised plaintiff by letter through one of its agents, that plaintiff was protected if Hassler legally attempted to recover. Defendant in its answer denies the authority of the agent to send the letter but admits that it was sent. About 11 months later Hassler instituted an action in trespass against plaintiff claiming damages in the sum of $1,500, plus punitive damages for the ";deliberate, willful, reckless and wrongful conduct . . ." of plaintiff, through his employes, in so dumping dirt and gravel on Hassler's land, in permitting it to remain, and in destroying certain shrubs and plants when removing the same. After plaintiff had been served with the complaint on or about May 23, 1949, he promptly notified defendant thereof and forwarded a copy of the complaint to defendant. About five weeks later, on July 7, 1949, counsel for defendant insurance company entered their appearance in the action and filed preliminary objections to the complaint. Defendant's counsel thereafter argued preliminary objections and filed a brief in support thereof. In December of 1949 an opinion overruling the preliminary objections was filed, and on January 10, 1950, the insurance company's counsel filed a petition to extend for 30 days the time in which to file a writ against an additional defendant, which petition was allowed. On or about January 17, 1950, the insur-

ance company's counsel by letter requested plaintiff to meet with them to discuss a defense to the trespass action. On February 10, 1950, when plaintiff did meet with defendant insurance company's counsel, plaintiff, for the first time, was advised that defendant did not consider the claim of Hassler within the coverage of plaintiff's policy with defendant, the reason assigned being that since the Hassler complaint averred plaintiff's acts, through his employes, to be deliberate, willful, reckless and wrongful, the same did not constitute an accident within the meaning of the policy. On or about March 1, 1950, defendant, through its counsel, notified plaintiff that unless plaintiff signed a nonwaiver agreement, defendant would disclaim all coverage under the policy. Plaintiff, upon advice of his own counsel, refused to execute the proposed nonwaiver agreement and defendant thereupon refused to defend the trespass action against plaintiff. Thereupon plaintiff instructed his personal counsel to undertake the defense of the case, an additional defendant was joined, and the case was tried in October, 1950, resulting in the following special verdicts:

"(1) Do you award any damages to plaintiff (Hassler) because of injury to peony buds? Yes, sum of $400.00."

"(2) Do you award any damages to plaintiff (Hassler) because of injury to boxwood? No."

"(3) Do you award any punitive damages to the plaintiff (Hassler)? No."

"We find in favor of plaintiff the sum of $300.00 cash for peonies plus the sum of $100.00 restoration of the plot and in favor of Hempt Bros. We find against Dominic Saracena."

Plaintiff caused these verdicts to be satisfied, and having expended the sum of $697.05 in costs and counsel fees incident to said trespass action, made claim upon defendant for the sum of $1,097.05 with interest,

which defendant refused to pay. Plaintiff thereupon instituted the action which we have before us, and in answer to plaintiff's complaint, defendant denies plaintiff's right to recover under the policy *solely* upon the ground that plaintiff's liability rising out of the Hassler suit was not within the "terms of the coverage as set forth in the policy. . . ." Plaintiff did not contend either at the argument or in his brief that there was coverage, but contented itself with making the claim that defendant was estopped to set up such a defense.

Plaintiff by his own individual counsel, Nauman, Smith, Shissler & Hall, on January 27, 1954, filed a motion for judgment on the pleadings and it is this matter which we now have before us for decision.

Plaintiff, in support of his motion for judgment on the pleadings, argues that a liability insurer, in an action brought against it upon a policy, is precluded from setting up the defense of noncoverage where, with knowledge or possessing facts which should afford it knowledge of a ground of noncoverage

(a) it assumes and conducts the defense of an action brought against its insured, or

(b) it assumes the defense of an action brought against its insured even though it disclaims coverage prior to the actual trial of the action against its insured.

With respect to the doctrine of estoppel, upon which plaintiff bases its motion for judgment on the pleadings, we have distinct pronouncements by the Supreme Court of Pennsylvania. In Malley v. American Indemnity Co., 297 Pa. 216, which is the leading case in Pennsylvania, the insurance company in an action upon a policy disclaimed liability on the ground that the insured was not the sole owner of the car as warranted. This question of coverage was not raised until after the company had undertaken and conducted the

defense of an action against its insured. In denying the insurer's contention, the Supreme Court established the general rule in Pennsylvania, where it said (pp. 224, 225):

"Where an insurance company, under an indemnity contract, takes charge of the defense of an action on which liability rests, it will be estopped from thereafter questioning the claim either because it was beyond the terms of the policy or because the latter was procured by a breach of some warranty: . . . When an insurance company or its representative is notified of loss occurring under an indemnity policy, it becomes its duty immediately to investigate all the facts in connection with the supposed loss as well as any possible defense on the policy. It cannot play fast and loose, taking a chance in the hope of winning, and, if the results are adverse, take advantage of a defect in the policy. The insured loses substantial rights when he surrenders, as he must, to the insurance carrier the conduct of the case. The insurance carrier is not placed in any disadvantageous situation, especially as the lack of ownership did not contribute to the loss. The estoppel to assert the breach of warranty as to title, is no higher in right than an estoppel generally to deny that the claim came under the policy. In effect, both are of equal merit. With a little diligence and within a brief time, the carrier could have procured the exact knowledge on which it now relies, and in most cases may similarly prepare a defense."

Again in Graham v. United States Fidelity & Guaranty Co., 308 Pa. 534, the insurance company disclaimed liability on a policy on the ground of non-coöperation of the insured after it had defended a trespass action against the insured. There the court said (page 540):

"It cannot now, after an adverse verdict, deny its liability on the ground that the claim was not within

its contract; it might have declined to defend, and rested on the position that the case was not covered by its policy, but, having made its decision, it is bound thereby."

At the argument in the case at bar, counsel for plaintiff admitted that the general rule as enunciated by the Supreme Court has only general application in this case because factually defendant prior to trial did disclaim liability under the policy and withdrew from the trespass action instituted against plaintiff. Notwithstanding this, plaintiff contended that defendant was clearly estopped. There are a number of cases in Pennsylvania where we have the factual situation of an insurer undertaking the defense of its insured, but later withdrawing prior to the actual trial of the action against its insured because of either noncoverage or a breach of warranty or conditions by the insured.

In Cameron v. Berger, 336 Pa. 229, the insurer had investigated a claim, gathered evidence and conducted settlement negotiations but disclaimed liability on its policy before suit was instituted against its insured on the ground of noncoöperation. The Supreme Court found no estoppel in the insurer's activities but did state that if the insurer had assumed defense of the actions against its insured, its right to have availed itself of the insured's breach of the insurance contract would have been jeopardized.

In Lewis et ux. v. Fidelity & Casualty Co., 304 Pa. 503, a contractor's liability policy was involved and the insurer denied liability upon the ground of noncoverage in that the tort complained of did not result from the insured's activity in doing "carpentry". The insured, in altering a building by lowering a floor, negligently injured a third person who instituted suit against the insured. The insured notified the insurer and not until some six months later did the insurer

notify the insured that it denied liability and would not defend the case. Summary judgment for the insurance company was entered by the lower court. In reversing the lower court, the Supreme Court said that apart from the issue of whether the insured's activity was within the terms of the policy, the question of estoppel to deny coverage was in issue and said with respect to this particular question (pp. 508-09):

"We stated in *Malley v. American Indemnity Co.*, 297 Pa. 216, 224, 'When an insurance company . . .is notified of loss occurring under an indemnity policy, it becomes its duty immediately to investigate all the facts in connection with the supposed loss as well as any possible defense on the policy. It cannot play fast and loose, taking a chance in the hope of winning, and, if the results are adverse, take advantage of a defect in the policy. The insured loses substantial rights when he surrenders, as he must, to the insurance carrier the conduct of the case. . . . With a little diligence and within a brief time, the carrier could have procured the exact knowledge on which it now relies, and in most cases may similarly prepare a defense. . . . With these facts before it, had they been deemed sufficient, it could have declined to defend the case.' In deciding which course it should pursue, it could easily have ascertained the character of work defendant was engaged in, and if it decided it was not liable, it could have acted accordingly, but it cannot delay its decision and refrain from giving notice to the insured until such time has elapsed that his rights in relation to the accident *are prejudiced or may become so*. Here the insurance company waited more than six months. Five months after the accident plaintiff was examined by a physician of the insurance company to ascertain the extent of her injuries, thus indicating an intent on the part of the company to contest the claim. It is now too late to assert nonliability under a contract of

this character. The case of *Malley v. American Indemnity Co.*, supra, applies." (Italics supplied.)

One must note that in this last case the Supreme Court emphasized the fact that the insured's rights "are prejudiced or may ·become so." However, · the Supreme Court held that because the insurance company had waited more than six months. after being notified, it was then too late to assert nonliability under a contract of the character sued upon.

In the case of Gross et al. v. Kubel et al. 315 Pa. 396, the Supreme Court points out that while the entry of an appearance by the insurer in an action against the insured in itself is not sufficient to create an estoppel, its *untimely* disclaimer of liability after knowledge of grounds for disclaimer is present or it possesses facts which should afford such knowledge, renders the doctrine of estoppel applicable. On pages 400-401 the Supreme Court says:

" 'None of the cases cited by the plaintiff, either from· this or from other jurisdictions, holds an insurance company liable under facts similar to those of the case before us: nothing contained in them applies to a case where the assured has concealed from the insurance company the fact that he has violated a condition of the policy, and the insurance company does not know, and is deterred from investigation by the concealment of the assured. In such circumstances estoppel does not operate to prevent the company from disclaiming immediately upon its learning the facts which justify the disclaimer. See Doolan v. United States Fidelity & Guaranty Co., 85 N. H. 531, which is the closest to this case, on its facts, that has been called to our attention.

" 'The rule to be gathered from the numerous reported decisions upon this subject seems to be that the entry of an appearance for an insured by his insurance company does not of itself constitute a waiver of a

defense available to it under the policy it has issued, but that it is entitled to a reasonable time in which to investigate and determine whether it desires to avail itself of any defense that may be found to exist. If its investigation is conducted with reasonable dispatch and its disclaimer is made with promptness upon the discovery of the facts, it does not lose its defense by the mere entry of an appearance. *There can be no final rule for determining whether a company has acted reasonably in this respect. This question must be solved by a consideration of the circumstances of each case.* . . . Applying these principles to the case before us, we are of opinion that the interval of seven months before the company disclaimed liability under the policy, during which it relied in good faith upon the appearances created by the report of the accident by the insured, was not an unreasonable delay, especially when it is recalled that the company acted a full year and a half before the case came on for trial, and immediately upon discovery of the defense available to it.' " (Italics supplied.)

Plaintiff further argues that the foregoing Pennsylvania cases clearly establish that the loss of the right to control and manage the case constitutes, as a matter of law, a prejudice to the insured under the Pennsylvania doctrine of estoppel and does not require the insured to establish prejudice as a matter of fact. He points out that while no Pennsylvania cases have been found where this question is specifically in issue, the Malley case, supra, does hold that "the insured loses substantial rights when he surrenders, as he must, to the insurance carrier the conduct of the case." This, we believe, may be a correct statement of the law of general application but we are not convinced that it applies to the facts in this case. As we have already pointed out, in Lewis v. Fidelity & Casualty Co., supra, the court says:

". . . but it [the insurer] cannot delay its decision and refrain from giving notice to the insured until such time has elapsed that *his* (the insured) *rights in relation to the accident are prejudiced or may become so.*" (Italics supplied.)

Plaintiff quotes the case of Fairbanks Canning Co. v. London Guaranty & Acci. Co., 154 Mo. App. 327, 133 S. W. 664. There the court says while discussing the matter of prejudice:

"It would be dangerous and unjust to allow such position to prevail. Who can say what plaintiff (the assured) might have done in its own behalf had it not been ousted from control and direction of the defense? . . . If a man is to bear the burden of the result of a defense to an action, it is his privilege to have his own personality appear in its course. He is entitled to have the results measured up to him and not to some other. . . . The loss of a right to control and manage one's own case is, itself, a prejudice."

Again we say that this may be a correct statement of the law of general application, but we do not believe that it applies in this particular case. We must agree with counsel for defendant that although plaintiff has generally interpreted the law correctly as it is laid down in the cases which we have heretofore cited, a careful reading of those cases, would indicate the better statement of the rule applicable in this case to be that an insurer is liable because of its withdrawal after the assumption of a defense where the withdrawal is untimely and results in prejudice to the insured.

In Gross v. Kubel, supra, the Supreme Court pointed out that the insurance company did not lose its right to withdraw even after the entry of an appearance, *as the question of withdrawal must be solved by consideration of the circumstances in each case,* and held that a delay of seven months was not unreasonable

especially where the withdrawal took place a year and a half before the case came to trial.

Of particular importance is the case of Kelly v. Kass, Appeal of White, 154 Pa. Superior Ct. 267, 35 A. 2d 531. There White, as counsel for the insurance carrier, filed a petition requesting a rule for leave to withdraw as counsel after having entered an appearance for defendant alleging noncoverage. The rule was discharged and an appeal was taken by White. The lower court took the position that the withdrawal in itself would operate as a prejudice to defendant Kass. Judge Kenworthey in reversing said:

"Kass is in a position to adequately protect himself. If, after having defended the case at his own expense, *he is able to show* that the withdrawal of the company was a breach of the insurance contract, he is entitled to recover from it all his losses, including counsel fees and costs." (Italics supplied.)

In Orcutt v. The Erie Indemnity Co., 114 Pa. Superior Ct. 493, 174 Atl. 625, plaintiff instituted an action on a liability policy to recover a judgment which he had secured against Mendicino to whom defendant had issued the policy. Defendant contended that there was no coverage on the policy because plaintiff had paid the assured for transportation and, secondly, assured had given it a nonwaiver agreement whereupon it proceeded with the defense. Plaintiff took the position under the Malley, Lewis and Graham cases, supra, that defendant was estopped from questioning the claim since it had taken charge of the defense. Judge Parker overruled this contention and entered judgment for defendant. Factually he found that the accident occurred November 15, 1930; that on December 1, 1930, the company knew there was a violation of the policy; suit was instituted against Mendicino February 5, 1931, in the Federal court; on February

28, 1931, defendant entered an appearance and filed a demurrer which was later dismissed; and on April 15, 1931, Mendicino and defendant entered into a non-waiver agreement. Judge Parker pointed out that the waiver came 5 months after the accident, 10 weeks after the suit was started, *and 7 months before trial.* He then used the following language (p. 498) :·

"When the waiver was delivered, the assured knew that the insurance carrier was insisting upon the benefit of the conditions in the policy and specifically agreed in writing that the action of the carrier in defending the suit should not be construed as a waiver. *This gave Mendicino ample time to prepare and present his defense by his own counsel if he had so desired.*" (Italics supplied.)

A review of the facts as established by the pleadings does not lead to the inevitable conclusion that plaintiff, Saracena, was prejudiced. This is a question which must be determined upon the particular facts in the case. It may be that he was—it may be that he was not. From the facts it is established that the suit was begun on May 18, 1949, by Hassler. An appearance was entered on July 7, 1949, by defendant, and preliminary objections were filed which were overruled by the court on December 12, 1949. On January 10, 1950, counsel for defendant secured a 30-day extension in order to bring in Hempt Bros. as an additional defendant. On January 17, 1950, defendant's counsel requested an interview with plaintiff to discuss the question of defense, which interview was held on February 10, 1950. On March 1, 1950, counsel for the defense wrote to Mr. Shissler setting forth defendant's postition and requesting a nonwaiver agreement and bringing to his attention that the time to file a complaint to join Hempt Bros. as additional defendant had been extended for an additional period of 30 days to March 10, 1950. Plaintiff under the advice of

Mr. Shissler refused to execute the nonwaiver agreement, and on March 9, 1950, filed his complaint joining Hempt Bros. as an additional defendant. The trial then took place on October 16, 1950. It thus appears that beginning with February 10, 1950, plaintiff knew of defendant's position in the matter. He was informed that the original complaint alleged a willful trespass which did not fall within the coverage involving damages to property as a result of an accident. From then on until the trial in October of 1950, seven months later, he was acting under the guidance and direction of his own personal counsel, Mr. Shissler. The facts could not have been so much involved, and we believe it is possible that the time allowed him to prepare his case under the guidance and direction of his own counsel was ample and sufficient.

Plaintiff has presented his motion for judgment on the pleadings under Rule 1034 of the Pennsylvania Rules of Civil Procedure. This rule provides as follows:

"Rule 1034. Motion for Judgment on the Pleadings

"(a) After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings.

"(b) The court shall enter such judgment or order as shall be proper on the pleadings."

The substance of the motion for judgment on the pleadings is that defendant has failed to state a legal defense to plaintiff's claim. In Goodrich-Amram 1034(b)-1 it is said:

"The court is given wide powers in ruling on the motion."

Rule 1034(b) describes it as "such judgment or order as shall be proper." We are of the opinion here that this motion should not be granted. It is our opinion that the case should proceed to trial upon the facts set forth in the pleadings and it may well be that a

jury will find that plaintiff was not prejudiced by the delay and that no rights were lost by him. On the other hand, if it appears from the testimony that he was prejudiced, then that fact may very properly be determined by a jury. We cannot fail to take notice of the fact that plaintiff, by his own personal counsel, filed a complaint joining Hempt Bros. as an additional defendant and alleged a willful, wanton and intentional trespass. By doing this, it may be argued that plaintiff recognized that his insurance carrier had a legal defense under the policy, and in a sense he joined in such recognition. The defense of noncoverage here may be an absolute one. Plaintiff relies upon an absolute estoppel. If plaintiff at the time his own personal counsel took over the conduct of the case brought in an additional party defendant, and seemingly recognized the merit of defendant's position of noncoverage at that time, it can be argued that he is not prejudiced. On the pleadings we are not convinced that plaintiff's right to a summary judgment is clear, and therefore find that the case should proceed to trial in order that the true status of the parties may be ascertained.

We are of the opinion that the language of the Supreme Court in its per curiam opinion in Automobile Banking Corporation v. Williamsport National Bank, 336 Pa. 298, 299 (1939), is here appropriate, where it held that " 'because we believe that this case is not free from doubt, and that there should be a broad inquiry into the facts, the rule for judgment for want of a sufficient affidavit of defense is discharged'."

For the foregoing reasons, we now enter the following

### Order

And now, June 21, 1954, plaintiff's motion for judgment on the pleadings is overruled and it is hereby dismissed.